IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

IRWIN DOUGLAS,

      Plaintiff,                   No. CIV 09-1038 KJM EFB PS

      vs.

SACRAMENTO COUNTY, et al.,

                          FINDINGS AND RECOMMENDATIONS

      Defendants.

_____/

     This case is before the undersigned pursuant to Eastern District of California Local Rule 302(c)(21).  *See* 28 U.S.C. § 636(b)(1).  Presently pending for decision is defendants' motion for summary judgment.  Dckt. Nos. 40, 42.  For the reasons stated herein, the undersigned will recommend that the motion be granted.

I.     <u>BACKGROUND</u>

     Plaintiff initiated this civil rights action pursuant to 42 U.S.C. § 1983 on April 17, 2009 against Sacramento County, Sacramento County Sheriff's Department, Sacramento County Sheriff's Deputy Robert Falk, and Sacramento County Sheriff's Deputy Robert Williams. Compl., Dckt. No. 1.  His complaint states that on April 28, 2008, the defendants violated his civil rights because "[he] was arrested (kidnapped) by Deputies Falk and Williams [w]ithout a warrant, and no evidence of any crime." *Id.* at 1.  Plaintiff contends that "[t]here was no warrant

1  ever issued for [his] arrest." *Id.*  The complaint further alleges: "What was the point of my

2  arrest?  Malice, amusement, to embarrass me, discrimination, (national origin, race), defame my

3  character (an arrest record makes it very hard to survive and take care of my family).  Those

4  actions violated my civil rights, and the Defend[a]nts should be held responsible." *Id.* at 2.

5      Defendants filed an answer on July 10, 2009, Dckt. No. 10, and now seek summary

6  judgment on all of plaintiff's claims.  Defs.' Mot. for Summ. J. ("Defs.' MSJ"), Dckt. No. 42, at

7  2.  Plaintiff opposes the motion, Dckt. Nos. 43-46, and moves the court to disregard certain

8  documents and evidence submitted by defendants in support of their summary judgment motion,

9  Dckt. Nos. 44 and 47.  Defendants also object and move to strike certain evidence submitted by

10  plaintiff in opposition to their summary judgment motion.  Dckt. No. 50-1.

11  II.    MOTION FOR SUMMARY JUDGMENT

12      Defendants assert that the gravamen of plaintiff's complaint "is that he was arrested

13  without a warrant, ostensibly asserting a claim for relief pursuant to 42 U.S.C. [§] 1983 for

14  violation of the Fourth Amendment."  Defs.' MSJ at 2.  However, defendants contend that the

15  undisputed evidence shows that plaintiff was taken into custody pursuant to a valid arrest

16  warrant and that defendants were entitled to rely on the warrant in effecting the arrest. *Id.*  Thus,

17  defendants contend that plaintiff cannot establish any claims for relief as a matter of law.[1] *Id.*

18      Plaintiff opposes the motion for summary judgment, arguing that "[t]here was no warrant,

19  outstanding or other, for [his] arrest on the day [he] was kidnapped by Deputies Falk and

20  ////

21

22      [1]  Defendants also contend that (1) the Sacramento County Sheriff's Department is not a
separate legal entity and is redundant to the County of Sacramento, and therefore should be
23  dismissed; (2) Deputy Williams did not arrest plaintiff and therefore cannot be liable on
plaintiff's Fourth or Fourteenth Amendment claim; (3) Deputies Falk and Williams are entitled
24  to qualified immunity; and (4) plaintiff cannot establish liability against the County of
Sacramento because plaintiff has not alleged any unconstitutional policy, custom, or practice by
25  the County, as required by *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691
(1978).  However, as explained below, because defendants are entitled to summary judgment on
26  alternative grounds, these arguments need not be addressed.

1   Williams." Pl.'s Resp. to Defs.' Mot. for Summ. J. ("Pl.'s Resp."), Dckt. No. 43, at 2.[2]  Plaintiff

2   contends that the "warrant" defendants submitted as evidence in support of their summary

3   judgment motion is a "fabricated copy" and that defendants "cannot produce an/the original."

4   *Id.* at 7.[3]  Plaintiff argues that "a copy of any 'warrant' is not a valid/legal document" because

5   "[c]opies can be produced at any time" and a copy is "not valid without the carbon-date tested

6   original." *Id.*

7          A.     <u>Summary Judgment Standard</u>

8          Summary judgment is appropriate when it is demonstrated that there exists "no genuine

9   issue as to any material fact and that the moving party is entitled to a judgment as a matter of

10  law." Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district
> court of the basis for its motion, and identifying those portions of
> "the pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any," which it
> believes demonstrate the absence of a genuine issue of material
> fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

        Summary judgment avoids unnecessary trials in cases with no genuinely disputed

material facts.  *See N.W. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.

1994).  At issue is "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, Rule 56 serves to screen

---

[2]  Defendants object to and move to strike this portion of plaintiff's response to their summary judgment motion on the ground that "it is conclusory and lacks foundation."  Dckt. No. 50-1 at 2.  That objection is overruled.  Defendants also object to various other evidence and documents submitted by plaintiff in opposition to defendants' motion for summary judgment.  *See* Dckt. No. 50-1 at 2-9.  To the extent that those objections and/or motions to strike are not specifically addressed herein, the objections and motions to strike are denied as unnecessary.

[3]  Defendants object to and move to strike this portion of plaintiff's response on the grounds that "it is an improper objection to evidence submitted by Defendants."  Dckt. No. 50-1 at 3.  That objection is overruled.

1   the latter cases from those which actually require resolution of genuine disputes over material

2   facts; e.g., issues that can only be determined through presentation of testimony at trial such as

3   the credibility of conflicting testimony over facts that make a difference in the outcome.

4   *Celotex*, 477 U.S. at 323.

5          If the moving party meets its initial responsibility, the opposing party must establish that

6   a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v.*

7   *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To overcome summary judgment, the opposing

8   party must demonstrate a factual dispute that is both material, i.e. it affects the outcome of the

9   claim under the governing law, *see Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pac.*

10  *Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and genuine, i.e., the evidence is

11  such that a reasonable jury could return a verdict for the nonmoving party.  *See Wool v. Tandem*

12  *Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).   In attempting to establish the existence

13  of a factual dispute that is genuine, the opposing party may not rely upon the allegations or

14  denials of its pleadings but is required to tender evidence of specific facts in the form of

15  affidavits, and/or admissible discovery material, in support of its contention that the dispute

16  exists.  *See* Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11.

17         In resolving a summary judgment motion, the court examines the pleadings, depositions,

18  answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

19  Civ. P. 56(c).  The evidence of the opposing party is to be believed.  *See Anderson*, 477 U.S. at

20  255.  All reasonable inferences that may be drawn from the facts placed before the court must be

21  drawn in favor of the opposing party.  *See Matsushita*, 475 U.S. at 587.  Nevertheless, inferences

22  are not drawn out of the air, and it is the opposing party's obligation to produce a factual

23  predicate from which the inference may be drawn.  *See Richards v. Nielsen Freight Lines*, 602 F.

24  Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

25  demonstrate a genuine issue, the opposing party "must do more than simply show that there is

26  some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could

4

1  not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

2  trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).

3       B.     <u>Facts</u>[4]

4       Based on the pleadings and evidence on file in this action, the court finds the following

5  facts to be undisputed:

6       1.     <u>The Warrant</u>

7       In March 1996, a Payless Drug Store in Sacramento County was burglarized.  Pl.'s Resp.,

8  Ex. 1 at 7; *see also* Defs.' Stmt. of Undisp. Facts ("SUF"), Dckt. No. 42-1, ¶ 1.[5]  In its

9  investigation of the burglary, the Sacramento County Sheriff's Department recovered several

10  fingerprints from the door and broken windows of the drug store.  Pl.'s Resp., Ex. 1 at 10.  A

11  Sacramento County Crime Scene Investigator determined that one of the recovered fingerprints

12  was made by plaintiff's left thumb.  *Id.* at 9.

13       Based on the presence and location of the plaintiff's fingerprint, the Sacramento County

14  Sheriff's Department requested a warrant for plaintiff's arrest for second-degree burglary.  *Id.* at

15  5, 16.  In October 1996, an arrest warrant was obtained and activated for "Erwin Douglas."  SUF

16  ¶ 1; Defs.' MSJ, Exs. F, I.  The arrest warrant included various identifying information regarding

17  Mr. Douglas, including a date of birth, sex, race, height, weight, hair color, eye color, social

18  security number, and driver's license number.  SUF ¶ 2.  The warrant remained active when

19  plaintiff was arrested on April 28, 2008.  SUF ¶¶ 3, 4. 5.[6]  Plaintiff was aware as early as

20  _____

21  [4] Plaintiff neither admitted or denied the facts set forth by defendants as undisputed as
required by Local Rule 260(b).  Because plaintiff neither submitted his own statement of
22  disputed facts nor addressed defendants' statement of undisputed facts, the court accepts
defendants' version of the facts except where contradicted by plaintiff's complaint or by the
23  documents and evidence plaintiff submitted in opposition to the summary judgment motion.

24  [5] Unless otherwise stated, all citations to the Statement of Undisputed Facts herein
incorporate by reference the evidence cited in the SUF in support of each undisputed fact.

25  [6] Plaintiff objects to the declaration of Michael Ziegler, which is cited in support of this
SUF, on the grounds that Mr. Ziegler's testimony is "unsubstantiated and unsupported,
26  fabricated, hearsay, nonsense."  *See* Dckt. No. 47 at 1.  Plaintiff also objects to the "arrest report

1  September 2004 that he was "wanted for burglary" in California.  Pl.'s Resp. at 5.[7]

2          2.    Plaintiff's Arrest

3          On April 28, 2008, Deputy Falk was on duty at the William R. Ridgeway Family

4  Relations Courthouse in Sacramento County.  SUF ¶ 6.  Prior to the start of court, Deputy Falk

5  searched the Sacramento County Sheriff's Department's Wants and Warrants computer system

6  for the names of those individuals scheduled to appear before the court.  SUF ¶ 7.  It is the

7  custom and practice of the Sacramento County Sheriff's Department for deputy sheriffs assigned

8  to courtrooms to do so.  SUF ¶ 17.

9          Plaintiff was scheduled to attend a hearing in the court on that day.  Compl. at 1.  When

10  Deputy Falk searched for plaintiff's name, the computer system indicated that there was an

11  active warrant for plaintiff's arrest.  SUF ¶ 8.  It is the custom and practice of the Sacramento

12  County Sheriff's Department to arrest an individual when the Wants and Warrants computer

13  system indicates there is an active warrant for that person's arrest.  SUF ¶ 18.

14          When plaintiff appeared in court, Deputy Falk compared the name, date of birth, and

15  social security number that plaintiff provided with the identifying information listed in the

16  warrant.  SUF ¶¶ 9, 10.  He also observed that plaintiff's height, weight, and race matched those

17  listed in the warrant.  SUF ¶ 10.  Upon determining that plaintiff was the person described in the

18  warrant, Deputy Falk arrested him.  SUF ¶¶ 11, 12.  Plaintiff's date of birth, social security

19  number, race, and gender are the same as on the warrant, and plaintiff admits he formerly

20  resided at the address reflected on the warrant.  SUF ¶¶ 15, 16.

21  —————————

22  and declaration of probable cause by John Anderson" and the declarations of Falk and Williams.
   *Id.*; *see also* Dckt. No. 44 at 5.  The objections are without merit and are overruled.

23          [7]  In September of 2004, Plaintiff was informed by the Miami Beach Police Department
24  that he was wanted for burglary in California.  Pl.'s Resp. at 5.  Also, in 2007, plaintiff attempted
   to purchase a firearm but was denied because a background check revealed that he was wanted in
   California for burglary.  *Id.*
25          Defendants object to and move to strike this portion of plaintiff's response on the
   grounds that "it is irrelevant and immaterial" and "lacks foundation."  Dckt. No. 50-1 at 3.
26  Those objections are overruled.

As is the practice and custom of the Sacramento County Sheriff's Department, Deputy Williams then transported plaintiff to booking.  SUF ¶¶ 13, 19.  After booking, plaintiff received an "Inmate Booking Information Receipt."  Pl.'s Resp., Ex. 1 at 1.  Although this booking receipt indicated that plaintiff did not have any outstanding warrants as of that time, *see id*., after a person is arrested pursuant to a warrant, the warrant is cleared, meaning the warrant no longer appears as active.  Defs.' Mot. for Summ. J., Decl. of Michael Ziegler in Supp. Thereof, Dckt. 42 at 68, ¶ 7.

Plaintiff posted bail that same day and was released.  Compl. at 2.

C.    Analysis

1.    Unlawful Arrest

To prevail on a § 1983 claim for unlawful arrest, a plaintiff must demonstrate that there was no probable cause for his arrest.  *Cabrera v. City of Huntington Park,* 139 F.3d 374, 380 (1998).  To determine whether an officer had probable cause at the time of the arrest, a court considers whether at the moment of the arrest, the facts and circumstances within the officer's knowledge were sufficient to warrant a prudent person in believing that the individual arrested had committed an offense.  *Beck v. Ohio*, 379 U.S. 89, 91 (1964).  An officer may rely on a judge's probable cause determination and on the technical sufficiency of the warrant so long as the officer's reliance is objectively reasonable.  *Harlow v. Fitzgerald,* 457 U.S. 800, 815-819 (1982).

Plaintiff's primary allegation appears to be that he was falsely arrested as "there was no warrant ever issued for [his] arrest."  Compl. at 1.  Defendants disagree, arguing that a valid warrant existed for plaintiff's arrest.  Defendants have provided the Court with a certified copy of the warrant for plaintiff's arrest.  Defs.' Ex. I.  Although plaintiff contends that the warrant is inadmissible since it is a copy and not the original, the certified copy of the warrant that defendants have submitted, which is accompanied by a signed letter from a Deputy Clerk of the Sacramento County Superior Court certifying that the annexed warrant "is a correct copy of the

1   original on file," is both self-authenticating and admissible in accordance with Federal Rules of

2   Evidence 901 and 902.  Fed. R. Evid. 901(b) ("[T]he following are examples of authentication or

3   identification conforming with the requirements of this rule: . . . (7) Public records or reports.

4   Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in

5   a public office, or a purported public record, report, statement, or data compilation, in any form,

6   is from the public office where items of this nature are kept."); Fed. R. Evid. 902(b) ("Extrinsic

7   evidence of authenticity as a condition precedent to admissibility is not required with respect to

8   the following: (1) Domestic public documents under seal. A document bearing a seal purporting

9   to be that of the United States, or of any State, . . . or of a political subdivision, department,

10  officer, or agency thereof, and a signature purporting to be an attestation or execution. . . . (4)

11  Certified copies of public records. A copy of an official record or report or entry therein, or of a

12  document authorized by law to be recorded or filed and actually recorded or filed in a public

13  office, . . . certified as correct by the custodian or other person authorized to make the

14  certification . . . .").  The undisputed facts also establish that the warrant was in existence at the

15  time that plaintiff appeared in court on April 28, 2008.  SUF ¶ 5.

16          Although plaintiff contends that the warrant is  "fabricated," he has presented no

17  evidence in support of that position.  He only offers argument and speculation that the warrant

18  must be a fabrication or somehow invalid.  Plaintiff's sole piece of evidence is an "Inmate

19  Booking Information Receipt" that he received after he was booked into the Sacramento County

20  Jail on April 28, 2008, which stated, "OUTSTANDING WARRANTS: NONE."  Pl.'s Resp., Ex.

21  1 at 1.  Plaintiff argues that this proves that there was never a warrant issued for his arrest.

22  However, the undisputed evidence shows that there was an active warrant for plaintiff's arrest on

23  the date that plaintiff was arrested but that the warrant was cleared, or deemed inactive, after

24  plaintiff was arrested pursuant to that warrant, thereby explaining why the Inmate Booking

25  Information Receipt noted that plaintiff had no outstanding warrants.

26  ////

1    In light of the facially valid warrant that was in existence when plaintiff appeared in

2 court on April 28, 2008, as well as Deputy Falk's verification that the descriptors and identifiers

3 therein matched plaintiff,[8] defendants have sufficiently demonstrated that there is no genuine

4 issue of material fact regarding whether Deputy Falk's arrest of plaintiff was both reasonable and

5 supported by probable cause.[9]   Accordingly, defendants are entitled to summary judgment on

6 plaintiff's § 1983 claim for unlawful arrest.

7    2.    Due Process Violation

8    Additionally, although the allegations in plaintiff's complaint are unclear, to the extent

9 plaintiff claims his detention was a violation of his right to due process under the Fourteenth

10 Amendment, defendants are entitled to summary judgment.

11    "Liberty is protected from unlawful state deprivation by the due process clause of the

12 Fourteenth Amendment." *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir.1985).  The loss of

13 liberty caused by an individual's mistaken incarceration "after the lapse of a certain amount of

14 time" gives rise to a claim under the due process clause. *Baker v. McCollan*, 443 U.S. 137, 145

15 (1979).  However, not every deprivation of liberty gives rise to a constitutional claim.  An arrest

16 and subsequent detention, pursuant to a facially valid arrest warrant, does not violate due process

17 where the detention is not unduly long. *Baker*, 443 U.S. at 144-145 (where arrest was made

18

19    [8] Although plaintiff's name was misspelled on the warrant, defendants have sufficiently
20 demonstrated that the spelling listed on the warrant is a known alias for plaintiff and that a
sufficient number of other descriptors and identifiers in the warrant matched plaintiff.  *See* Defs.'
21 MSJ, Ex. C.

22    [9] Further, although plaintiff appears to contend in his opposition to the summary
judgment motion that the warrant was invalid because it was not supported by probable cause at
23 the time it was issued, Dckt. No. 43 at 6-8, those allegations are not included in plaintiff's
complaint.  Moreover, plaintiff has not provided any evidence demonstrating a genuine issue of
24 material fact regarding that claim, nor has he shown that he could overcome the presumption of
validity associated with warrants issued by neutral magistrates. *See Franks v. Delaware*, 438
25 U.S. 154 (1978).  Additionally, plaintiff has not alleged that the individual defendants named
herein had any connection to the issuance of the warrant or that the County of Sacramento had
26 any unconstitutional policy, custom, or practice regarding the issuance of warrants, as required
by *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

9

1    pursuant to a facially valid warrant, a three day detention does not amount to a due process

2    violation); *Erdman v. Cochise County*, 926 F.2d 877, 882 (9th Cir. 1991)(twelve day detention

3    did not violate due process where arrest was made pursuant to facially valid warrant).

4         Neither party disputes that plaintiff was detained after his arrest.  Pl.'s Resp., Ex. 1 at 1-3.

5    However, as noted above, plaintiff has failed to provide any evidence demonstrating that the

6    warrant for his arrest was facially invalid.  Plaintiff also does not provide any evidence

7    demonstrating that his detention, which lasted less than a day, was unduly long or that he could

8    or should have been released sooner.  Accordingly, defendants are entitled to summary judgment

9    on plaintiff's due process claim.

10              3.    Equal Protection Clause

11        Finally, to the extent that plaintiff's allegation that "the point of [his] arrest" was

12   "discrimination, (national origin, race)" purports to establish a claim under § 1983 for violation

13   of plaintiff's rights under the equal protection clause, defendants are entitled to summary

14   judgment on that claim.  Compl. at 2; *see also* Pl.'s Resp. at 7 (contending that defendants'

15   actions were "based solely on malice, bigotry, racism").

16        The equal protection clause commands that no state shall "deny any person within its

17   jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  It is not enough to

18   show mere differential treatment; a party must allege and prove the presence of an unlawful

19   intent to discriminate against him for an invalid reason.  *Snowden v. Hughes*, 321 U.S. 1, 8

20   (1944).  Here, plaintiff has failed to provide any evidence demonstrating that he was arrested

21   because of his race or national origin, or for any other invalid reason, or that any of the named

22   defendants acted with any racial animus or discriminatory intent toward plaintiff.  Therefore,

23   defendants are entitled summary judgment on plaintiff's equal protection clause claim.

24   ////

25   ////

26   ////

III.    UNDERLINE_CONCLUSION

III.    CONCLUSION

    In accordance with the foregoing, IT IS HEREBY RECOMMENDED that:

    1.  Defendants' motion for summary judgment, Dckt. No. 40, be granted;

    2.  Plaintiff's motion to disregard various evidence and documents submitted by defendants, Dckt. Nos. 44 and 47, be denied;

    3.  Defendants' motion to strike various evidence and documents submitted by plaintiff, Dckt. No. 50-1, be denied; and

    4.  The Clerk be directed to enter judgment for defendants and close this case.

    These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  February 9, 2011.

                                    EDMUND F. BRENNAN
                                    UNITED STATES MAGISTRATE JUDGE